**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DAVID P. FUNDERWHITE** ) | Case No. 1:16-CV-593 |
| ) | |
| Plaintiff, ) | |
| ) | Judge Dan Aaron Polster |
| vs. ) | |
| ) | |
| **JOINT APPRENTICESHIP AND** ) | |
| **TRAINING COMMITTEE OF** ) | **OPINION AND ORDER** |
| **CLEVELAND JOURNEYMEN** ) | |
| **PLUMBERS LOCAL NO. 55, et al.,** ) | |
| ) | |
| Defendant. ) | |

Plaintiff David P. Funderwhite claims that Defendants improperly expelled him from a journeyman apprenticeship program. He seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and he brings state law claims of breach of express and implied contract. Defendants now move to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The motion is fully briefed and ready for the Court's consideration. The question raised by the parties is whether resolution of Plaintiff's state law claims depends upon a substantial federal question significant enough to trigger the Court's "arising under" jurisdiction pursuant to 28 U.S.C. § 1331.

Upon review of the parties' briefs, the relevant law, and the particular allegations in this case, the Court concludes that resolution of Plaintiff's state law claims does not depend on a substantial, disputed question of federal law. Therefore, because no other grounds for subject-

matter jurisdiction exist, Defendants' motion for lack of subject-matter jurisdiction is granted. The Court's reasons are described below.

**I. Background**

On September 15, 2009, Plaintiff David P. Funderwhite ("Plaintiff") enrolled in a journeyman plumber apprenticeship program. (Doc #: 1, ¶ 1). On June 13, 2014, after obtaining an excessive number of self-elimination points, he was expelled from the program. (*Id*. at ¶ 15). After exhausting his administrative appeals, Plaintiff filed the present lawsuit contesting his termination. Plaintiff seeks an order declaring that Defendants had insufficient grounds for expelling him from the apprenticeship program, and he brings state law breach of contract claims. (*Id*. at ¶ 34.) Plaintiff maintains that he is entitled to reinstatement, and he seeks an award of monetary damages, attorney fees, and expenses. (*Id*. at ¶¶ 38, 40).

Defendant the Joint Apprenticeship and Training Committee of the United Association of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local No. 55 (a/k/a Cleveland Journeymen Plumbers Local Union No. 55 of the United Association) (hereinafter, "the Joint Committee") administers the apprenticeship program at issue. (*Id.*). Defendant Cleveland Plumbers Joint Apprenticeship Trust Fund ("the Trust Fund") sponsors the apprenticeship program. Plaintiff alleges that the Joint Committee is an agent of the Trust Fund (*Id. ¶* 3), and that the Joint Committee follows policies and guidelines adopted by the Trust Fund. (*Id.*). The Trust Fund and the Joint Committee delegate day-to-day management and administration responsibilities of the program to Defendant Jason M. Shank ("Mr. Shank") (Collectively, "the Defendants"). (*Id.* ¶ 6).

According to the Complaint, the apprenticeship program is registered with the United States Department of Labor under the National Apprenticeship Act ("NAA"), 29 U.S.C. § 50, as a program approved by a state apprenticeship agency. (*Id*.). Plaintiff contends that, in order to operate as a "registered" apprenticeship program under the NAA and related regulations, the apprenticeship program must conform to the standards prescribed in Parts 29 and 30 of Title 29 of the Code of Federal Regulations. (*Id*. ¶ 9). A "registered" program must also conform to any supplemental standards that the state apprenticeship agency adopts. (*Id*.). The state agency responsible for regulating the program in this case is the Ohio State Apprenticeship Council. (*Id*.).

Plaintiff entered into the "Apprenticeship Agreement" with Defendants on September 15, 2009. (Doc. #: 1 at ¶ 11). Under the agreement, the parties agreed "to the terms of the standards and work process schedule of the related registered program," and Plaintiff agreed to abide by the Rules and Regulations governing the program. (See Doc. 1-1). The Rules and Regulations provide that "an apprentice within the 'years of the apprenticeship' [who] acquires a total of 3 strikes (30 points)" will be "automatically . . . terminated from the apprenticeship." (*Id*.). Points may be administered if an apprentice fails to adhere to the Rules and Regulations of the program. At various times during his enrollment, Plaintiff received Rules and Regulations published by the Joint Committee. (*Id*. ¶ 12).

Over the course of his apprenticeship, Plaintiff was assessed a total of thirty-two points, twenty-seven of which he now challenges. (*Id*. ¶¶ 14, 16). On each occasion in dispute, Plaintiff received letters from the Joint Committee, authored by Defendant Shank, addressing the assessment of points. (*Id.* ¶ 14.). On March 26, 2012, Plaintiff was assessed twenty points for

"falsification of information" and "failure to follow instructions." (*Id.*). He received three points for failing his third year drawing course. (*Id.*). He was further assessed points for not making up missed class time, and for failing his fifth year plumbing design and layout course. (*Id.*).

On June 11, 2014, after being assessed a total of thirty-two points, Plaintiff was notified that he had been expelled from the apprenticeship program as of June 13, 2014. (*Id.* at 15). Plaintiff was advised that he had "the right to appeal in writing to the Joint Apprenticeship Training Committee within 30 days of the date of this letter." (*Id*. ¶¶ 15, 17). Plaintiff timely requested an appeal. (*Id*. ¶ 19). On August 14, 2014, after Plaintiff met with the Joint Committee (Doc #1 at ¶ 19), his appeal was denied. (*Id*. ¶ 20).

On September 9, 2014, Plaintiff petitioned the Ohio State Apprenticeship Council ("OSAC"), the state agency responsible for administering and enforcing the statutes and regulations governing the apprenticeship program. (*Id*. ¶ 24). Plaintiff argued that Defendants committed violations of state law by expelling him from the program. (*Id*.)

On June 29, 2015, OSAC notified Plaintiff of its conclusion that Defendants' apprenticeship program met the statutory requirements for a registered apprenticeship program, with the exception of one area of concern, that being the record-keeping requirements. (*Id*. ¶ 25–26). The notice stated that OSAC's investigation of the records for Plaintiff and for twenty additional apprentices revealed inconsistencies as to when apprentices were laid off or terminated. (*Id*. ¶ 26). OSAC recommended that Defendants review and revamp their documentation policy. (*Id*.).

On March 10, 2016, Plaintiff filed this lawsuit alleging three causes of action. First, Plaintiff asserts an action for Declaratory Relief under 28 U.S.C. §§ 2201, 2202. Plaintiff alleges

-4-

that there were insufficient grounds for assessing 27 of 32 points. (*Id*. at ¶32). Plaintiff seeks an order declaring that the Defendants did not keep adequate records pertaining to his eligibility to remain in the program and Shank's grounds for expelling Plaintiff; that the Joint Committee should have vacated all or at least a sufficient number of the points in dispute; and that the expulsion notice is vacated, entitling Plaintiff to be reinstated to the apprenticeship program. (*Id*.).

Second, Plaintiff maintains that Defendants materially breached the Apprenticeship agreement, by failing to discharge their express duties under that agreement; by breaching the implied covenant of good faith and fair dealing; by failing to adhere certain provisions in the Code of Federal Regulations and in the Ohio Administrative Code; by assessing unfounded points against Plaintiff; by failing to maintain adequate records establishing a basis for the point assessment; by failing to provide Plaintiff with proper access to records in advance of his appeal; by failing to provide Plaintiff with an adequate opportunity to challenge the point assessment; and by failing to reinstate Plaintiff to the program. (*Id*. at ¶37).

Third, Plaintiff brings a claim for breach of an implied contract. (*Id*. ¶¶ 38–40). Plaintiff argues that by engaging in the conduct mentioned above, Defendants have also breached an implied contract requiring them to honor the duties imposed on them by law. (*Id*. ¶ 39).

Defendants now move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. (Doc. #: 11-1). The plaintiff filed a response in opposition (Doc. #: 12), and the Defendants filed a reply. (Doc. #: 13).

**II. Federal Jurisdiction**

Federal courts have subject-matter jurisdiction over civil actions through either diversity jurisdiction or federal question jurisdiction. Diversity jurisdiction is proper when the action is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Federal question jurisdiction is present when the action "arises under" the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. "Arising under" jurisdiction takes two forms. First, in its most typical form, "arising under" jurisdiction exists when federal law creates the cause of action. *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916); *See also Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). The second form of "arising under" jurisdiction, whose application Plaintiff seeks here, is called the substantial-federal-question doctrine. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007)

Under the substantial federal question doctrine "a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski*, 501 F.3d at 565 (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 9 (1983)). "As an initial proposition, . . . the 'law that creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13.

However, "[t]he mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal. Such jurisdiction remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski*, 501 F.3d at 565. In deciding whether an embedded federal issue provides a basis for this Court's jurisdiction, the Court must weigh the federal interest in providing a forum against "the risk that the federal courts will be unduly burdened by a rush of state law cases." *Id.*

### III. Discussion

The primary issue in this case is whether Plaintiff's state law claims present a substantial federal question, but there are three initial points which, while largely non-controversial, the Court will briefly address.

### A. Preliminary Issues

First, it is uncontested that diversity jurisdiction does not exist here. Plaintiff does not plead an amount in controversy or the citizenship of the defendants. *See Washington v. Sulzer Orthopedics, Inc.,* 76 F. App'x 644, 645 (6th Cir. 2003) ("[P]laintiff must state all parties' citizenship such that the existence of complete diversity can be confirmed."). And, based on the assertions of Defendants, it is apparent that the parties are all citizens of the same state, Ohio.

Second, Plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. It is well-settled that the Declaratory Judgment Act does not expand the jurisdiction of the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1960). The Act authorizes federal courts to declare the rights of a party in a case without granting any other relief. *See* 28 U.S.C. § 2201. The purpose of the statute is to create a remedy for a preexisting right enforceable in federal court, but it does not provide "an independent basis for federal

-7-

subject matter jurisdiction." *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007); *see Skelly Oil*, 339 U.S. at 671–72. "Before 'invoking the Act,' . . . a federal court must 'have jurisdiction already' under some other federal statute." *Toledo*, 485 F.3d at 839 (quoting *Heydon v. MediaOne of S.E. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)). Thus, Plaintiff's claim under the Declaratory Judgment Act does not independently give rise to federal subject matter jurisdiction.

Third, while the Complaint alleges that Defendants violated regulations associated with the National Apprenticeship Act, Plaintiff's opposition brief clarifies that he is not bringing a claim under that statute. It should be reinforced, however, that no private cause of action is authorized under the NAA. *See Thomas v. Joint Apprenticeship Comm. of Plumbing & Pipefitting Indus., Local No. 225*, 823 F.2d 553, 1987 WL 38059, at *2 (6th Cir. 1987). In *Thomas*, plaintiffs brought a claim under the NAA, arguing that they were improperly denied entrance into an apprenticeship program. *Id.* at *1. The Sixth Circuit concluded that subject matter jurisdiction was lacking because there was no congressional intent to give an apprentice the right to sue. *Id*. at 2. Thus, to the extent that Plaintiff's complaint might be construed to assert a claim under the National Apprenticeship Act, that claim is not properly before the Court.

**B. Whether Plaintiff's State Law Claims Give Rise to a Substantial Federal Question**

The question presented in this case is whether resolution of Plaintiff's state law claims depend upon a substantial question of federal law such that jurisdiction is proper pursuant to 28 U.S.C. § 1331. In support of his argument that they do so depend, Plaintiff asserts that the apprenticeship program is a "registered program" under the National Apprenticeship Act. As such, he argues, it is regulated by federal law, particularly Parts 29 and 30 of Title 29 of the Code

of Federal Regulations.  These regulations impose obligations on the program to adhere to the policies and goals of the U.S. Department of Labor; to apply rules regarding apprentices in a uniform manner; and to preserve "adequate records."  (Doc. 1 at ¶36).  Plaintiff suggests that Defendants are liable for breaching the Apprenticeship Agreement by failing to fulfill those regulatory obligations.  (Doc. #:1 ¶ 36).  As a consequence, Plaintiff argues that resolution of his state law claims necessarily depends on a substantial issue of federal law.

The Sixth Circuit has established a three-part test for determining whether a state law claim involves a substantial federal question: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities."  *Mikulski*, 501 F.3d at 568.  The Court will address each element in turn.

**1. The state-law claim must necessarily raise a disputed federal issue**

Plaintiff's state law claims do not necessarily turn on the construction of federal law.  At the heart of this dispute is whether Defendants breached the Apprenticeship Agreement by improperly assessing points and discharging Plaintiff from the program.  Throughout his brief, Plaintiff suggests that the Court must look to federal law to determine whether the discharge was proper or not, but he does not precisely explain how federal law is necessarily implicated.

Two United States Supreme Court cases are instructive on this point. In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 214 (1921), the Court determined that a plaintiff's claims necessarily raised a significant federal issue where a company's directors allegedly breached a state law duty to plaintiff shareholders by investing in bonds issued pursuant to an allegedly

unconstitutional federal statute. Similarly, in *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310-11 (2005), the Court recognized that the state law claim for quiet title presented a necessary question of federal law. The plaintiff there alleged that the defendant's record title was invalid because the IRS, in seizing the plaintiff's property to satisfy a federal tax deficiency, had failed to give the plaintiff proper notice pursuant to 26 U.S.C. § 6335(a).

In both of these cases, it was not simply that federal law was allegedly violated; rather, the interpretation of the relevant federal law was disputed. In the present case, unlike *Smith* and *Grable*, there is no dispute as to the construction or constitutionality of the federal laws and regulations being cited by Plaintiff. Plaintiff does not challenge the constitutionality or construction of the National Apprenticeship Act or the regulatory policies and goals of the Department of Labor.

The closest Plaintiff comes to describing a specific disputed federal issue is his claim that Defendant's record-keeping practices failed to meet the federal standard, but again, unlike *Smith* and *Grable*, Plaintiff does not challenge the federal regulations related to record-keeping. In fact, it is evident that Plaintiff is in agreement with the manner in which the record-keeping standards were applied when his dispute was before the state agency that heard his appeal. While the agency ultimately determined that Defendants' apprenticeship program was compliant, it issued recommendations to Defendants for improving their record-keeping practices.

Plaintiff fails to persuasively explain how his claims turn on the interpretation of federal law. In the Court's view, Plaintiff's claims relate exclusively to the question of whether his apprenticeship was properly terminated under the Agreement. This is a state law issue, not a

federal issue, and this determination will be made with reference to the Agreement itself and the actions of the parties.

## 2. The federal interest in the issue must be substantial

To the degree that any federal issue is implicated here, that issue is not substantial.  In *Mikulski*, the Sixth Circuit identified four aspects of a case or an issue that affect the substantiality of the federal interest in that case or issue:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

501 F.3d 555, 570.  "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id*.

### a. Involvement of a Federal Agency

First, there is no federal agency involved here, and Plaintiff does not allege that any federal agency failed to comply with the law.  Instead, the instant dispute surrounds whether non-governmental entities, the Joint Committee and the Trust Fund, materially breached a state law contract.  No federal agency was a party to the apprenticeship agreement and no federal agency played a role in the alleged breach of the apprenticeship agreement.  This factor weighs against characterizing the federal interest as substantial in this case.

**b. The Importance of the Federal Question**

When determining the importance of a federal question, this Court considers whether the federal question implicates any broader or more substantial issue. *See Mikulski*, 501 F.3d at 571. Given that the Court has already determined that it is not necessary to interpret federal law in order to decide Plaintiff's case, the issue of whether the alleged federal question is important is largely unnecessary. In any event, to the degree that any federal issue is implicated in this case, the Court is not persuaded that it involves broader or more substantial issues.

While there is no dispute that Congress regards regulation and promotion of trade apprentice programs as an important national policy, it is not evident that this broader issue is implicated here. Plaintiff fails to tie the particular facts of this case to any broader issue, other than to say that Defendants' actions were generally inconsistent with the national policy. Although proper record-keeping, in particular, is conceivably connected to the national policy of effectively and consistently administering trade apprenticeship programs, there are no allegations connecting Defendants' allegedly poor record keeping to broader national policy or, even more importantly, the broader issues in this case.

It is alleged that the Defendants' records were inconsistent with respect to when certain apprentices, including Plaintiff, were laid off or terminated. The Court is not convinced that record-keeping errors of this nature involve an important federal issue. And in terms of the importance to this particular case, there is no allegation that Plaintiff was harmed by the discrepancies. Nor is there a claim that the discrepancies had any bearing on his allegedly improper expulsion from the program. Therefore, the ostensible federal issues presented here are not particularly important.

**c. Will a decision on the federal question will resolve the case?**

To the degree that any federal question is presented here, its resolution will not resolve all aspects of this case. For instance, even if the Court decided that Defendants did not keep proper records in the manner alleged by Plaintiff, this would not answer the question whether Defendants breached the contract when they assessed the points that are being contested by plaintiff. Whether Defendants properly assessed points after Plaintiff allegedly failed courses, falsified information, and failed to make up missed classes will be determined without reference to federal law.

**d. Will resolution of the federal question control numerous other cases?**

The alleged federal issue or issues in this case have not been precisely defined, and it is difficult to say whether a decision in this case would provide any meaningful precedent. But, it is unlikely that it would, as the issues raised relate to the specific factual circumstances surrounding Plaintiff's expulsion, and not any broader issue that might bear on future cases.

Based on the balance of the factors, the alleged federal issues are not substantial.

**3. Whether the exercise of jurisdiction will disturb any congressionally approved balance of federal and state judicial responsibilities**

Even if there were a significant federal interest here, the exercise of jurisdiction over this type of lawsuit would impermissibly disrupt the congressionally-approved balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 315. As discussed *supra*, Sec. III.A, Congress has made no provision for a federal cause of action under the National Apprenticeship Act. The absence of a cause-of-action provision is not determinative, but it is a factor that weighs against opening the court house doors to this type of lawsuit. *See Grable*, 545 U.S. at 318–19. If Congress did not intend to authorize an apprentice to bring a cause of action under

the Act, it would make little sense that an aggrieved apprentice could be heard in federal court simply by reformulating his NAA claim as a state law contract claim.

Further, if the Court were to open the court house door to Plaintiff, there is a risk that this precedent could disrupt the proper management of the federal judicial system. Any future apprentice upset by his termination would have the opportunity to seek review from both the state agency and from a federal court. This would cause an influx in the number of cases filed in federal court that was not envisioned or sanctioned by congress.

### III. Conclusion

Plaintiff does not raise a disputed issue of federal law necessary to the resolution of this case, and allowing jurisdiction in this case could disrupt the balance of federal and state judicial responsibilities. Therefore, and for the reasons stated above, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED.

**IT IS SO ORDERED.**

**/s/ Dan Aaron Polster    7/20/2016**
**Dan Aaron Polster**
**United States District Judge**